## HUFFMAN *vs.* HUMMER.

1. A contract to convey lands bounded on the south by a line ten yards north of the quarries on them, the face of the quarries, as worked, being toward the south, must be held to mean lands bounded on the south by a line ten yards north of the face of the quarries, as worked, without regard to the extent toward the north, of the stone that constitutes the quarries.

2. When a line by which land is to be conveyed, is described as a line ten yards north of the face of quarries upon the tract, and that face is jagged, and at one extremity much to the north of the general line of the face, the line must be a straight line in every part, distant, at least, ten yards from the face of the quarry.

3. Although a written contract cannot, either at law or in equity, be waived or discharged by parol, yet, when one party, by a parol waiver or discharge, induces the other to enter into engagements inconsistent with its performance, the remedy by specific performance will be barred; but for that purpose the waiver must be explicit, and clearly proven.

4. When the defendant bound himself to convey on or before a certain day, and the complainant agreed to pay on the deed being executed, the complainant is not in laches in not tendering himself ready to pay, if the deed has not been executed or tendered.

5. A complainant asking specific performance, must have shown himself ready and eager to perform his part, and must be guilty of no laches in bringing suit; but a delay of six days in demanding a deed, or of fifteen days in bringing suit, will not be esteemed laches.

This cause was brought on for final hearing, upon bill, answer, and proofs.

*Mr. Van Fleet,* for complainant.

Equity can only be done by decreeing specific performance. The contract is already partly executed. The complainant has paid $300 of the purchase money, and has been put in possession of the land, and has made improvements, for which he can recover no recompense if his prayer is denied.

Equity regards the complainant as the owner of the land, and the defendant as the owner of so much of the purchase money as is unpaid. 1 *Story's Eq. Jur.,* § 790.

Courts of equity will decree specific performance of a con-

tract within the statute of frauds, when it has been in part performed ; and this is done upon the ground that otherwise one party would be able to practice a fraud upon the other. 1 *Story's Eq. Jur.*, § 759, and cases cited in notes 1, 2, 3, and 4.

The relief complainant asks is resisted on four grounds—

1. Laches of complainant. 2. Parol waiver of the contract. 3. Misconduct of complainant, in procuring an erroneous survey of the land to be made. 4. The agreeement is so uncertain that it cannot be enforced.

1. Laches.

The great purpose of courts of equity, in taking jurisdiction of suits for specific performance, was to give relief in cases where the complainant had, by reason of the great strictness of courts of law, lost his right to an action for damages in consequence of some default.

Courts of equity frequently decree specific performance where the terms of the agreement have not been strictly performed by the party seeking relief, and he has thereby lost his right to sue at law. 1 *Sug. on Ven.*, ch. 4, sec. 3, par. 36, p. 277 ; 1 *Story's Eq. Jur.*, § 775 ; *Winne* v. *Reynolds*, 6 *Paige* 407 ; *Radcliffe* v. *Warrington*, 12 *Vesey* 326, (*marg.*); *Taylor* v. *Longworthy*, 14 *Peters* 173 ; *Perkins* v. *Wright*, 3 *Harris & M'Henry* 326 ; *Clitherall* v. *Ogilvie*, 1 *Dessaus.* 263 ; *Edwards* v. *Handley*, *Hard.* 102 ; *Voorhees* v. *De Meyer*, 2 *Barb. S. C. R.* 37 ; *Lewis* v. *Woods*, 4 *How.* (*Miss.*) 86 ; *Tevis* v. *Richardson*, 7 *Monroe* 656.

It is claimed that the complainant has not shown himself ready, desirous, prompt, and eager.

The contract required the defendant to deliver to the complainant a deed for the land, on or before April 1st, 1865. The defendant was to be the actor. The complainant waited for the defendant to fulfill his contract, until April 6th, and then demanded a deed, and tendered the balance of the purchase money. The land was sold by the acre, and the amount of the purchase money to be paid depended upon the

quantity of land. That could only be ascertained by a survey. It was the defendant's duty to have the land surveyed.

Time, in equity, is never regarded as material, unless it is made so by the express terms of the contract. 1 *Story's Eq. Jur.*, § 776; *Hipwell* v. *Knight*, 1 *Younge & Coll.* 415; 1 *Sug. on Ven.* 356, note 1; *New Barbadoes Toll Bridge Co.* v. *Vreeland*, 3 *Green's C. R.* 157. In the case last referred to, the contract was made in 1816, bill filed in 1839, and performance decreed.

Time is not made material by this contract. The defendant is not in a position to charge the complainant with laches. From the time the contract was made—October 6th, 1864—up to the time the bill was filed—April 12th, 1865—he never took a step necessary to the fulfillment of this contract on his part.

2. Parol waiver.

It is conceded that a parol waiver of a contract under seal, is a good defence in equity; but it must be shown by very clear proof that there was a total abandonment of the whole agreement, and that the parties were placed in the same situation in which they stood before the agreement was entered into. 1 *Sug. on Ven.* 202, *par.* 7; *Ibid.* 204, *par.* 9; *King* v. *Morford, Saxt.* 274; *Stoutenburgh* v. *Tompkins*, 1 *Stockt.* 332; *Baldwin* v. *Salter*, 8 *Paige* 473.

The waiver set up is, that on the 15th of March, 1865, as the parties casually met at a vendue, they got into a dispute about the correctness of a survey the complainant had procured to be made of the lands agreed to be conveyed, and in that dispute the complainant said he would not take a deed for the lands, unless conveyed according to that survey; that the defendant then said he would not convey according to that survey; and thereupon the parties separated, the complainant saying, "we will settle this another time," and the defendant replying, "all right." At the time these words were uttered, neither party understood that the contract was abandoned.

3. Misconduct of the complainant, in having an erroneous survey made.

If the survey was made with design to procure a conveyance of more land than the complainant purchased, it does not, in the slightest degree, abridge the complainant's rights in this case, and should not influence the judgment of the court one way or the other.

The defendant was not bound by it. If it was not satisfactory to him, he had a right to have another made. But the evidence shows it was made by the surveyor, with the agreement before him, as he thought, strictly in accordance with the agreement, and without any instruction or direction from the complainant. If an error was made in the survey, it was the error of the surveyor, and not of the complainant.

4. The agreement is so uncertain that it cannot be enforced.

The only respect in which it can be claimed that there is ambiguity, is in that part of it which relates to the location of the line along the lime quarry. The general direction of the face of the quarry is from east to west, until near its western boundary, and there its direction is northerly for about one chain. The language of the contract is, "the first lot is that part that come off the Stout farm, north of the lime quarry; *the line is to run ten paces north of said quarries.*"

There is no ambiguity. The contract requires but one line, and that that shall be a straight one. So much of the quarry as has been opened in a northerly direction, has been abandoned and unworked for over twenty years. It was not regarded as a quarry by the parties, at the time the contract was made. But if it should be held that this is a part of the quarry, there is no ambiguity. The face of the quarry is irregular, in some places extending much further south than in others. What is meant by the words, "the line is to run ten paces north of said quarries" is, not that it shall be exactly that distance north of each point of the quarry, but

ten paces north of the general direction of the quarry. There will be no difficulty in locating a line in that way.

*Mr. Bird* and *Mr. G. A. Allen,* for defendant.

THE CHANCELLOR.

This suit is for the specific performance of a contract to convey lands.

The contract was in writing, signed and sealed by both parties, dated October 6th, 1864, to convey the lands on or before the first day of April then next; part of the consideration was paid, and the complainant put in possession of the premises; he had made improvements, and cut wood and timber, and done other acts of ownership. The price to be paid was one hundred dollars per acre. One of the two tracts is stated to be, "that part that came off the Stout farm, north of the lime quarries; the line is to run ten paces north of said quarries; to all the land between the mill road and Euphemia Philhower's land on the west, and her line on the north, supposed to be about eighteen acres." The boundaries on the north and east and west, are certain and definite. The lime quarries on the south are part of the tract which the defendant reserved, and a dispute arose between the parties about the location of the line described in the agreement, "to run ten paces north of said quarries."

In February or March, 1865, the complainant had this line run by a surveyor, in the absence of the defendant, who was sent for, but being absent from home, did not receive notice of the survey. The defendant, when he learned the location of the line, disapproved of it as different from the line in the contract, and meeting the complainant on the 15th of March, in a conversation about the matter, told him that the line was not according to the contract; the complainant insisted that it was, and that he would require a conveyance according to that line; and, according to some of the testimony, said that he would not take it in any other way; but he said to the defendant, on leaving, "we will settle this some other time." The defendant made no survey or computation of the quantity

of land, nor prepared or executed any deed on or before the first of April; the property was encumbered by a mortgage and a judgment, which were unpaid. The agreement required the complainant to pay the price "on executing of the said conveyance." Neither party tendered himself ready to perform the agreement on or before the first of April. On the third of April, the defendant agreed to convey the premises to Euphemia Philhower, who paid him four hundred dollars on account, for which he took her note. She knew, at the time, of the contract with the complainant. On the sixth of April, the complainant, having heard of the sale to Mrs. Philhower, sent his son-in-law to the defendant, and notified him that he was ready, and had been for some weeks ready, to receive and pay for the property, and requested him to convey it. The defendant answered that the conveyance was not ready, and would not be ready; that he had sold the land to Mrs. Philhower. The complainant, without further demand or tender, filed the bill in this cause, having first purchased the mortgage on the property, which was assigned to him.

The difference about the south line arose from the fact that the face of the quarries mentioned in the agreement, and which had been worked from the south, run in a direction generally from east to west, or nearly so, from Mrs. Philhower's line on the east, until within about one chain of the western boundary or mill road; here they had been worked to some extent for more than a chain north of the general direction of the face of the quarry. The line run by the complainant's surveyor was ten yards north of the general direction of the face of the quarry, disregarding this part at the west side, and it run through this part, leaving a large portion of it north of the line. The defendant insisted that the agreement, by its true construction, calls for a line running ten yards north of all the quarries.

The defendant resists the claim for specific performance on these grounds:

1. That the agreement applied to the premises, is ambiguous and uncertain.

2. That, if his construction of it is correct, the complainant, by the notice given in March, that he would not perform it except as he construed it, discharged the agreement.

3. That complainant was guilty of laches in not tendering the money and demanding a deed on the first day of April.

1. As to the ambiguity. I have no doubt that the word quarries, here means the face of the quarries; it is the usual meaning of the word as applied to quarries opened and worked, and the other parts of this contract show that the word was used here in that sense. It is more difficult to determine what is meant by " a line to run ten paces north of the quarries," when the face of the quarries is not only jagged and irregular in the part having a general direction from east to west, but near its western terminus runs for three times ten paces north of the line of general direction. But the object of these words in locating that line, was to reserve to Hummer all his lime quarries, and ten paces north of the face as then quarried, for future use. This cannot be effected by adopting a line that will pass south of the face of any part.

The language, "the line," in such connection, means a straight line, one line, and not many lines. In this case, a line drawn from a point ten paces north of that part of the face of the quarry near the mill road, which extends the furthest north, to a point ten paces north of the face of the quarry, at its eastern extremity, near Mrs. Philhower's line, will answer both the language and the object of this description; it is the only line that will, and therefore is the line required by the agreement. I am, therefore, of opinion that this contract is not void for uncertainty.

2. Although this construction is not the one put upon the contract by the complainant in his interview with the defendant, on the 15th of March, I do not think that he is barred of his remedy in this suit, by what was then said. A written contract, especially one required by statute to be in writing,

cannot be waived or discharged by parol, at law, nor, in general, in equity. But in equity, this case is one of the exceptions to that rule. When the complainant has, by parol, waived or discharged a contract, and the defendant, by such action, has entered into obligations inconsistent with its performance, it is an equity that will bar the remedy by specific performance. *Fry on Spec. Perf.*, § 693; *King* v. *Morford, Saxt.* 274; *Stoutenburgh* v. *Tompkins,* 1 *Stockt.* 332; *Stevens* v. *Cooper,* 1 *Johns. C. R.* 429; *Baldwin* v. *Salter,* 8 *Paige* 473; *Backhouse* v. *Mohun et al.,* 3 *Swanst.* 434, *note.*

But such parol waiver or discharge must be clear and explicit, and proved beyond doubt. In this case, the conversation on March 15th, relied upon as a waiver of the contract, was not intended as such, and cannot be so construed. The complainant insisted on his construction, felt certain and positive that he was right, and avowed his intention to adhere to it, and not to perform the contract otherwise. Taken by itself, it was no discharge or waiver; but when accompanied by the words which the defendant himself testified were used by the complainant at parting, "we will settle this some other time," it is very clear that it was not intended as a discharge of the contract, and was not received as such. Few contracts would stand in this court, if such an insistment in the negotiations about their execution should be held to discharge them. *Fry on Spec. Perf.*, § 698.

3. The laches in this case is not such as will defeat the remedy. It may be well doubted if there was any laches at all. The defendant bound himself to convey, on or before the first day of April, the complainant to pay, on the deed being executed; until the deed was properly executed, he was not bound to pay, or to offer to pay. He was then not in default at law on his contract. But equity requires that a complainant, seeking for specific performance, should have shown himself ready, anxious, and eager to perform his part; but in this case there was no laches of the complainant.

Freeholders of Monmouth Co. *v.* Red Bank and Holmdel Turnpike Co.

Any further tender of the money, or readiness to perform, was dispensed with by the answer given by the defendant to the complainant's agent, on the sixth of April; he said he would not convey the land, and had sold it to another.

There was no laches in bringing suit; the bill was filed in fifteen days, not more than the time proper to be taken by careful counsel in preparing a bill in such cases.

There must be a decree for specific performance, and a reference to a master to ascertain and settle the boundaries, the quantity of the land, and the amount to be paid above the . sum already paid, and the encumbrances.