## J. BURTIS WHITE *vs.* NICHOLAS L. BERRY.

### PROVIDENCE—APRIL 2, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Landlord and Tenant. Surrender of Lease.*

Defendant hired of plaintiff by parol a tenement for the term of five years, at a rental of $500, payable quarterly. Defendant occupied the premises until October 3, 1898, when he moved out ; but he paid the rent up to October 15, 1898. July 29, 1898, defendant told plaintiff he was going to move on or before the expiration of the quarter for which he had paid, which ended October 15, 1898, and that plaintiff could show the tenement with view to letting it. August 18, 1898, plaintiff advertised the tenement and showed the house to people who came to see it ; he never

told defendant he intended to hold him for the rent, nor did he make objection to his moving. October 3, 1898, defendant moved out; the keys were left at plaintiff's house, and plaintiff went into the tenement and put up "To let" signs. Plaintiff never sent any bill to defendant, and defendant testified he would not have left when he did had plaintiff intimated that he expected to hold him for the rent :—

*Held,* that the plaintiff's conduct amounted in law to an implied acceptance of the premises which the defendant abandoned.

(2)   *Evidence.*

A letter written by a party after the happening of the events complained of cannot be used by himself as evidence of the existence of the facts therein stated.

ASSUMPSIT for rent. Heard on petition of plaintiff for new trial, and petition denied.

TILLINGHAST, J. This is an action of assumpsit, and is brought to recover the sum of $166.67, which the plaintiff claims to be due to him from the defendant for rent of tenement belonging to the plaintiff.

The material facts in the case are these : In March, 1896, the defendant hired of the plaintiff by parol the tenement in question for the term of five years from April 15, 1896, at a rental of $500 per annum, payable quarterly. In July next following, the plaintiff prepared a written lease of the tenement and took it to the defendant to sign ; but he objected to some of the provisions therein and refused to sign it, and nothing further was done in relation to that matter.

The defendant occupied the premises until October 3, 1898, when he moved out ; but he paid the rent up to October 15, 1898.

There was more or less friction between the families of the plaintiff and defendant—both of whom occupied the same house—from the beginning of the defendant's tenancy, and on July 29, 1898, the defendant went to the bank where the plaintiff was employed, and told him that he had bought a house and was going to move because he could not stand the friction any longer ; and that he should move on or before the expiration of the quarter for which he had paid, which ended on October 15, 1898. And in that connection he told

the plaintiff that he could show the tenement with a view to letting it. In reply to the defendant's statement that he should move, the plaintiff testifies that he said : "How about your lease?" That the defendant said, "there is no lease." And that he then started to go out ; and the plaintiff said, "I will see you again."

On August 18, 1898, the plaintiff advertised said tenement to let. He never consulted the defendant about the advertising ; he never told him that he expected or intended to hold him for rent after he went out, nor did he make any objection to his moving.

The plaintiff received various answers to his advertisement, and showed the house to people who came to see it, as did also his wife, with his authority and consent. He never consulted with the defendant as to whether the people who came to look at the house could have it or not, but he endeavored to let it the same as he would have done if the defendant had never lived there.

On October 3rd the defendant telephoned to plaintiff that he had moved out, and that the plaintiff would get the keys that day.

In answer to the question, put to the plaintiff at the trial, "If you intended to hold Mr. Berry for rent after he delivered up the keys, why didn't you tell him over the telephone?" he said : "I cannot tell; I didn't."

The keys were left at the plaintiff's house on the day that defendant moved out, and that night the plaintiff went into the tenement and put up signs "To Let."

The plaintiff never sent any bill to defendant for the rent now claimed, and the defendant testifies that the plaintiff's communications to him gave him to understand that the plaintiff was anxious to have him get out, and hence he moved before he wanted to ; and also, that he would not have left at the time he did if the plaintiff had in any way intimated that he expected to hold him for the rent after he moved.

At the trial of the case in the Common Pleas Division, the jury found a verdict for the defendant ; and the case is now

before us upon the plaintiff's petition for a new trial on the grounds that the verdict is against the evidence, and also that the trial court erred in refusing to allow the plaintiff to introduce a letter written by the plaintiff to the defendant on February 28, 1899.

The plaintiff claims that under the facts aforesaid there was no acceptance by him of the surrender of the premises by the defendant, and hence that defendant is liable for the rent thereof from the 15th day of October, 1898, to the 15th day of February, 1899, by way of damages for a breach of the implied contract on the part of the defendant to occupy the premises until the termination of the yearly tenancy, to wit, until the 15th day of April, 1899.

It will at once be seen that the only question raised by the evidence is whether the defendant surrendered and the plaintiff accepted the surrender of said premises. The plaintiff's contention is that the defendant attempted to surrender the same, but that there was no acceptance on the part of the plaintiff.

The defendant contends, on the other hand, that there was a surrender and acceptance of said tenement; that the case was properly submitted to the jury upon this question; and that, there being sufficient evidence to support their finding, the verdict should not be disturbed. He also contends that an express agreement to accept the premises need not be shown, but that the landlord's assent may be implied, by operation of law, from the manner in which he uses the property after its abandonment by the tenant, and that such assent may exist in spite of the intention of the parties.

That an actual and continued change of possession of premises let, by the mutual consent of the landlord and tenant, will amount to a surrender of the premises by operation of law, there can be no doubt. Moreover, it is clear that such consent need not be express in order to be effectual, but it may be implied from circumstances, and from the acts of the parties.

Thus, as laid down by Mr. Taylor, in his standard work on Landlord and Tenant, 8th ed. vol. 2, § 515: "Although a

tenancy from year to year is not determined by the mere removal of a tenant, with a delivery of the key before the expiration of the term, or even by a parol license from the landlord to quit in the middle of a quarter; yet, if in either case both parties act upon the license, and the landlord takes possession or acts in such a manner as to render it impracticable for the tenant subsequently to use or occupy the premises, the tenancy is legally determined." In short, the law is that any acts which are equivalent to an agreement on the part of a tenant to abandon, and on the part of the landlord to resume possession of, the demised premises, amount to a surrender of a term by operation of law. *Talbot* v. *Whipple*, 14 Allen, 177; *Nelson* v. *Thompson*, 23 Minn. 508. If a lease is surrendered *conditionally*, of course the surrender does not take effect unless the condition is performed. But an unconditional agreement to surrender, acted upon by both parties, by the tenant by giving up possession, and by the landlord by re-assuming possession, or by reletting the premises, is operative as a surrender.

In *MacKellar* v. *Sigler*, 47 How. Pr. 20, it was held that where the tenant abandons the premises and the landlord enters to make repairs, it is such an acceptance as will establish a surrender. Again, where a tenant left the key at the counting-house of the landlord, and the latter, though he at first refused to accept it, afterwards put up a board to let the premises, and used the key to show them, and painted out the tenant's name from the front, it was held sufficient evidence of a surrender by operation of law. *Reeve* v. *Bird*, 1 C. M. & R. 31. But the sending of a key of the tenement to the landlord, without more, is not such a surrender and acceptance as will discharge a tenant's liability for rent. *Newton* v. *Laundering Co.*, 19 R. I. 546.

In *Nickolls* v. *Atherstone*, 10 Q. B. 944, it was held that where a lessee assents to the lease being granted to another, and gives up his own possession to the new lessee, that is a surrender by operation of law.

Lord Denman, C. J., said: "As far as the plaintiff is concerned, he has created an estate in the new tenant which he

is estopped from disputing with him, which is inconsistent with the continuance of the defendant's term. As far as the new tenant is concerned the same is true. As far as the defendant is concerned, he has been an active party in this transaction, not merely by consenting to the new relation between the landlord and the new tenant, but by giving up possession, and so enabling the new tenant to enter." The same doctrine is held in numerous cases in this country. See Wood Land. & T. § 497, and cases cited.

The undisputed facts in the case at bar clearly bring it within the principles thus announced, and fully warranted the jury in finding a verdict for the defendant. Whatever the plaintiff's intentions might in fact have been regarding the acceptance of said premises is immaterial, so long as his conduct was such as to amount in law to an acceptance thereof, as it clearly was. The defendant left the premises under circumstances which indicated a purpose on his part, not only to cease to occupy the same, but also to permit the plaintiff to gain access thereto and resume possession thereof.

The plaintiff's conduct, in entering and taking possession of the premises ; in advertising the same to let ; in making repairs thereon ; in actually reletting the same ; and in failing to consult with the defendant in any way regarding said proceedings, or to make any claim upon him for rent, are wholly inconsistent with his present claim and clearly show an implied acceptance of the premises in question. In other words, the plaintiff's acts aforesaid were tantamount in law to an express agreement, on his part, of acceptance of the premises which the defendant abandoned.

We have carefully examined the cases cited by plaintiff's counsel, but do not find that they are materially different in principle from those to which we have already referred.

(2)　The plaintiff's exception to the refusal of the trial court to allow the introduction in evidence of the letter of February 28, 1899, from the plaintiff to the defendant, must be overruled. It needs no argument to show that a party to an action cannot write a letter, after the happening of the acts complained of by him, and then use it himself as evidence of

the existence of the facts therein stated. In other words, it is elementary law that a person cannot make evidence in his own behalf.

Petition for new trial denied, and case remitted for judgment on the verdict.

*Franklin P. Owen,* for plaintiff.

*C. A. Aldrich,* for defendant.