This is a bill by a vendee to rescind an agreement of sale and to recover a deposit made on account of the purchase price. Defendant is the owner of a parcel of real estate, used as a restaurant called the Villa Richard. On April 30th, 1929, defendant leased this property to Harry Sossin, Alexander Stuart and Thomas F. Wood for five years at an annual rental of $24,000 payable monthly in advance. The lease contained an option to purchase for $500,000. The lessees deposited with the lessor $5,000 as security. In May, Sossin assigned his interest in the lease to Messrs. Stuart and Wood and they assigned the lease to complainant, a corporation of which they were officers.
Defendant and complainant on August 2d 1929, entered into a written agreement — the contract which complainant seeks to rescind. In the first place, by it defendant leases to complainant the Villa Richard for ten years, commencing August 1st, 1929. For the first year complainant agrees "to pay the sum of $7,900 which is two per cent. interest on $395,000, which said sum of $395,000 represents the balance due the party of the first part herein, after making *Page 403 
allowance to the party of the second part for $5,000 given to the party of the first part August 1st, 1929, and the sum of $3,000 as a payment on said principal sum of $395,000 for the first year from August 1st, 1929, to August 1st, 1930, making a total of $10,900 to be paid the first year in equal quarter-annual payments of $2,725, commencing with November 1st, 1929, and ending August 1st, 1930." For the remaining nine years, complainant agrees to pay quarterly installments of principal aggregating $99,000 with interest at two per cent. on the unpaid balance. Complainant also agrees to pay taxes, assessments and insurance premiums "until such time as this lease expires or the party of the second part obtains a deed of the premises as above described from the party of the first part."
It is further stipulated that: "This agreement shall operate as a sale and not as a lease of the above described premises and that the terms of the same be as follows: The purchase price is $400,000. The party of the first part agrees to apply $5,000 given to it by Stuart and Wood on May 1st, 1929, as a deposit on the purchase price, leaving a balance due of $395,000 * * * to be paid for the next ten years as above set forth in equal quarter-annual installments and the balance of the unpaid principal at the end of ten years is to be paid off at the rate of $12,000 on account of the unpaid principal, together with interest at the rate of two per cent. per annum until the whole principal sum is fully paid and satisfied, and which manner of payment is also more particularly set forth above." The defendant also acknowledges receipt of an additional $1,000 on August 2d 1929. At the foot of the contract is the written consent of Stuart and Wood individually, to the use of the deposit of $5,000 above mentioned.
The agreement recites that Jean Richard, the president of the defendant, contemplates a trip abroad and that upon his return, he shall have the right to inspect the books of complainant. "If he finds that net income during his absence warrants a change in the terms of the agreement," the parties "shall meet and arrange for suitable terms and if necessary *Page 404 
amend the terms of payment." Upon the return of Richard from Europe, the parties "shall meet and they may have the privilege of either amending this agreement or revising it and that any such revisions or changes shall only be done by mutual consent." Endorsed on the contract when it was executed is this note, signed by the presidents of the two parties: "This agreement is temporary until Mr. Richard returns from Europe about October 15th, 1929. This agreement is to be revised according to the business at that time."
Defendant says that the agreement being temporary, complainant can have no relief in this suit, citing such cases as Moore v.Galupo, 65 N.J. Eq. 194; Bettcher v. Knapp, 94 N.J. Eq. 433;Kuskin v. Guttman, 98 N.J. Eq. 617; Venino v. Naegele,99 N.J. Eq. 183; affirmed, 100 N.J. Eq. 357; Levine v. LafayetteBuilding Corp., 105 N.J. Eq. 532. The rule, I take it, is this: When the parties agree upon all the terms of their bargain, the contract is complete and enforceable even though the written contract contains a provision for such modifications as may later be agreed upon. But when the parties (1) agree on some of the terms of the contract which they embody in a writing and leave other terms for future negotiation; or (2) when the agreement is merely tentative and the parties intend to negotiate further before the contract shall have binding force; or (3) when, having agreed upon all the terms, they make it a part of the bargain that it shall not be operative until embodied in a written instrument signed by the parties, then the contract is not enforceable until the remaining terms are agreed upon or until the further action of the parties ratifies the tentative contract, or until the contemplated document is prepared and executed. The reason for this lies in the intent of the parties. The rule is the same in law as in equity. Donnelly v. CurrieHardware Co., 66 N.J. Law 388; Mente Co. v. Heller,99 N.J. Law 475. If I should look only at the provisions embodied in the contract proper, I should say that the parties intended the agreement of August 2d to be a complete and enforceable instrument; that its terms are to be modified only if Richard should find the net income warrants *Page 405 
a change and only if both parties agree to a change. This is not clear, however. The right given Richard to inspect complainant's books for the purpose of ascertaining what change should be made, and the positive covenant if Richard finds a change warranted, that the parties shall arrange suitable terms, imply that the contract shall not be obligatory if further negotiations are unfruitful. The endorsement on the contract cannot be overlooked. The evidence shows that Richard insisted upon it before he would sign the contract. It states unequivocally that the agreement is temporary until his return from Europe and that it is to be revised.
In my opinion, the agreement gave complainant the right to possession until Richard should return; all the rest was tentative. The agreement is not one that could be enforced specifically; but complainant does not ask enforcement. It seeks cancellation and the return of the deposit on account of the purchase price. A bill for rescission is sometimes regarded as a bill quia timet. Young Lock Nut Co. v. Brounley ManufacturingCo., 34 Atl. Rep. 947. The decree recognizes that the instrument does not bind complainant and prevents the vexatious or injurious use of the instrument against him. The ground for the decree need not have arisen after the contract was executed, but may have existed ab initio, as in cases of fraud. In most of our sister states relief cannot be had in equity against an instrument which, on its face, appears invalid. 9 C.J. 1191. On the other hand, Chancellor Kent in Hamilton v. Cummings, 1 Johns.Ch. 517, held, "this court has the power to order a bond or other instrument to be delivered up to be canceled whether such instrument is or is not void at law or whether it be void on the face of it, or by matters shown by the proofs in the cause." This language was quoted with apparent approval by Chancellor Williamson in Cornish v. Bryan, 10 N.J. Eq. 146. I think the law of this state permits the court to decree cancellation in a case like the present one where the agreement, though unenforceable, is still a colorable obligation and may, unless this court interferes, be used to vex and injure complainant. *Page 406 
The deposit could be recovered at law even though the contract is incomplete. Kurtz v. Busch, 3 N.J. Mis. R. 389;128 Atl. Rep. 552. Can complainant have similar relief in this court? That depends, I take it, upon whether it has a vendee's lien. A vendee's lien is an invention of equity; it arises not from the contract of the parties but from their acts — the payment and acceptance of a part of the purchase-money. A vendee may have a lien for purchase-money paid even though the contract, pursuant to which the payment was made, is incomplete and unenforceable. In Pierson v. Lum, 25 N.J. Eq. 390, a return of the purchase-money was decreed, although the contract was unenforceable in equity because the vendor was a married woman. The objection raised by defendant that the agreement was a mere temporary instrument not binding on either party, does not defeat complainant's prayer for relief. Indeed, the incompleteness of the contract would seem to aid complainant's case. It might be urged that neither party being bound, either could, at its option, without alleging any fault in the other, decide not to complete the transfer of the property and could demand of the other to be put in statu quo. Complainant does not, however, press this theory but relies on defendant's act to show that defendant first rescinded and thereby justified complainant in doing the like.
Mr. Richard sailed for France the day after the contract was signed. Whether complainant ever operated a restaurant at the premises, I am uncertain. Wood was actively engaged in the automobile business and Stuart was a dentist practicing in New York. I gather that for a while there was a cook and maybe one or two other employes at the property. On October 3d, gas and electric service were discontinued. About October 15th, Richard returned to this country, visited the premises and found in charge only a watchman, who told Richard that he had from complainant the privilege of renting rooms in order to make his pay. Richard then went to see Wood at the latter's auto shop. Wood told him that complainant expected to reopen the restaurant. Richard replied that they would have to pay him before they could do so. *Page 407 
He then opened the restaurant himself. A day or so later, still in the month of October, Stuart and Wood and their attorney, went to the property and asked Richard to give them back possession. He refused; there were high words, and Richard has ever since remained in possession. In October, 1929, there was nothing due by complainant to defendant under the contract; complainant had not breached its contract in any manner. It does not appear that Richard ever demanded an inspection of complainant's books of account, or endeavored to effect a revision of the contract. When Richard took possession of the property and refused to yield back possession to complainant except upon their making a payment they were under no obligation to make, he disclosed an intention on the part of defendant to treat the contract as of no effect and thereby entitled complainant to rescind. Whether this instrument be called a lease or an agreement of sale, it is clear that complainant had the right of possession thereunder as long as the agreement might remain in force, and that this was an essential right. The parties contemplated that complainant would operate the property and thereby gain an income which would assist in paying for the property. I think it also plain that complainant was under no obligation to operate a restaurant or to remain in actual possession of the property. It could lock the door and still retain all its rights under the agreement, so long as it made the periodic payments required and kept down the taxes and other charges and committed no waste.
Defendant says that complainant had already abandoned the contract. I find no evidence to warrant this conclusion. Complainant had left the property in charge of a watchman as it had a right to do; it had permitted the gas and electric service to be shut off; complainant had no funds to meet the payment which would be due November 1st, but its principal stockholders, Stuart and Wood, according to their testimony, had funds which they were willing to advance for that purpose. The facts do not show that complainant had determined to abandon its rights under the contract. A waiver of a contract right must be clear and explicit. Huffman v. Hummer, 18 N.J. Eq. 83, 90. *Page 408 
Defendant urges that upon a rescission of the contract or upon a recognition of its incompleteness, complainant was thereby restored to the status of tenant and defendant became entitled again to hold the deposit of $5,000 as security for rent under the lease of April 30th, 1929. The transaction of August 2d, whereby defendant gave complainant the right to immediate possession under the new agreement, evidenced an intent by both parties to cancel the lease and to pass title in the deposit of $5,000 from Stuart and Wood to complainant and from complainant to defendant as a deposit on account of the purchase price or, what amounts to the same thing, from Stuart and Wood to defendant for the account of complainant. But, says defendant, to effect a novation and thereby discharge an old obligation, it is essential that the new obligation be valid and enforceable. All the obligations supposedly put on complainant by the agreement of August 2d are inchoate and unenforceable; hence, runs the argument, there was no real consideration for the cancellation of the lease, and the lease remains effective. This seems to me sound except possibly the conclusion. A surrender of the term by the tenant and acceptance thereof by the lessor find each a sufficient consideration in the act of the opposite party. "When the minds of the parties to a lease concur in the common intent of relinquishing the relation of landlord and tenant and execute this intent by acts which are tantamount to a stipulation to put an end thereto, there at once arises a surrender by act and operation of law." Meeker v. Spalsbury, 66 N.J. Law 60. What was the intent of the parties? Certainly not merely that the relation of landlord and tenant should cease. They purposed to create a new obligation, valid and enforceable, a sale of the premises and thereby to terminate the lease. The intent and acts which might give rise to a surrender were subordinate to the sale and cannot stand when the sale falls. Doe v. Stanion, 1 M. W. 695; 150 Eng. Rep. 614. "If a lease is surrendered conditionally, of course the surrender does not take effect unless the condition is performed." White v. Berry,24 R.I. 74; 52 Atl. Rep. 682. *Page 409 
Likewise, the transfer of title in the deposit of $5,000 was conditional upon the effective surrender of the lease and upon the making of a binding contract of sale. During the period in which the agreement of August 2d was temporarily accepted by the parties, the lease remained in abeyance. But when the new agreement was abandoned, the lease was restored and defendant had still the right to hold the deposit of $5,000 as security for the lease.
The further sum of $1,000 appears to have been paid defendant at the time of the execution of the contract for no other purpose than the account of the purchase price. I know of no reason why defendant should retain it.
Complainant is entitled to a decree for the cancellation of the contract and to a return of the deposit of $1,000 with interest from August 2d 1929. The decree will carry costs of suit. Payment will be secured by a lien on the property and execution may issue if payment be not made within thirty days after service of a copy of the final decree and of the taxed bill of costs.