**UNITED STATES of America**

v.

**LINCOLN MILLS COMPANY, Baxter Woolen Company, Inc.**

**Civ. A. No. 2022.**

United States District Court
D. New Hampshire.

March 17, 1961.

Maurice P. Bois, U. S. Atty., Concord, N. H., John F. Beggan, Dept. of Justice, Washington, D. C., for plaintiff.

Cooper, Hall & Cooper, Richard F. Cooper, Rochester, N. H., for defendant Baxter Woolen Co., Inc.

No appearance for defendant Lincoln Mills Co.

CONNOR, District Judge.

In this action, the Government seeks to recover certain taxes due under the Withholding Act and has joined the Bax-

ter Woolen Company, Inc., as a co-defendant solely for the purpose of levying on funds allegedly held in the filing of an assessment.

■ The Baxter Woolen Company, Inc., hereinafter referred to as Baxter, was by lease a tenant of the defendant Lincoln Mills, hereinafter referred to as Lincoln, and occupied certain property owned by it at Pascog, Rhode Island. Their term of lease was for one year beginning June 20, 1955, with the option to renew for another year plus a further option for an additional fifteen months. The first option was taken up and the lease was renewed for a year with the term ending June 20, 1957. Early in May, it appears that there was some discussion about the matter of the term being extended for a few months, but apparently nothing came of it. Charles Baxter, President of Baxter Woolen Company, testified that somewhat later in the month he had a telephone conversation with one Knibb, President of the defendant Lincoln, wherein Knibb suggested a possible vacating of the premises by the Baxter corporation, it being represented that it would be to the interest of Lincoln if such could be accomplished. The implication of this proposal was that a new tenant would be more readily available if he could obtain possession of the premises prior to the expiration of the lease. Mr. Baxter indicated by letter of May 23, that he had no objection to terminating the lease prior to June 20, provided the lessee was allowed a pro rata rent reduction. The evidence is that its operations ceased shortly thereafter, the employees were given their final wages, and a new manufacturing unit was started in East Rochester, New Hampshire.

During at least part of the term of the Baxter occupancy, the tenant entered into an arrangement with the Internal Revenue Service and paid the monthly rent due to Lincoln to the District Director of Internal Revenue, which rent amounted to $2,083.33. This arrangement was understood by the defendant Lincoln. Baxter failed to send the check for the last payment of the rent, its position being, as it is now, that it owed only a proportionate part of the rent having agreed to and having actually vacated on May 25. Subsequently, a check was sent to the Internal Revenue Service for $486.08 in payment for what it considered its proportionate share of the rent. The Government's contention is that the entire month's rent was due and owing by Baxter and should have been forwarded to the Internal Revenue Service. Should it be determined that such rent was in fact due, then the Government may reach the funds involved, 26 U.S.C.A. §§ 6321 and 7403. The predecessors to these sections in the 1939 Internal Revenue Code (26 U.S.C.A., §§ 3670 and 3678), not materially different for present purposes, were interpreted so as to include rental payments due to the taxpayer. United States v. Graham, D.C.S.D.Cal., C.D.1951, 96 F.Supp. 318, affirmed State of California v. United States, 9 Cir., 195 F.2d 530, certiorari denied 344 U.S. 831, 73 S.Ct. 36, 97 L.Ed. 647.

The question is whether May 25 represents merely the termination date of Baxter's operation as a result of its own unilateral decision or whether it represents the termination of the lease by consent of both parties.

The testimony is conflicting on the point, but the court concludes that agents of another enterprise entered upon the premises on or about May 27 for the purpose of preparing for a new operation. It appears that in furtherance of that operation, work was started in the various departments, so that by June 20, the termination date of the Baxter lease, all departments were operating. It is undisputed that on June 25 Lincoln entered into a lease arrangement with the new occupant. The organization was styled "Gem Woolen Co., Inc.," but the lease ran to an individual, one Frederick Kenyon, evidently the principal incorporator. Kenyon testified that he paid

no rent to anyone for the period prior to the date of his lease. As will subsequently appear, the court is not persuaded that this fact is, of itself, conclusive of the matter.

Kenyon further testified that permission to enter the mill came in all likelihood from Mr. Knibb since he did not have any contact with Baxter. The actual arrangements seem to have been made by one Gignac acting as Kenyon's agent. It would thus seem that the purposes of the alleged proposal of Mr. Knibb to Mr. Baxter were accomplished. Whether or not it was made does not seem crucial to the outcome of the case, but the court believes that it was and that it constitutes some evidence of the intention of the parties. The early access to the premises by the new tenant could have been a beneficial factor to Lincoln in obtaining the new lease.

Under the law of Rhode Island, which must be controlling here, it appears that in the case of a lease for a fixed term, it can be determined only by expiration of the lease or by surrender and acceptance. Smith v. Hunt, 1911, 32 R.I. 326, 79 A. 826, 35 L.R.A.,N.S., 1132. A written lease may be terminated by surrender and acceptance. Ciambelli v. Porter, 1935, 55 R.I. 14, 177 A. 145. Whether such a surrender and acceptance has taken place is to be gleaned from the intention of the parties as evidenced by their acts and deeds. Ibid. "A surrender by act and operation of law arises only when the minds of the parties to a lease concur in the common intent of relinquishing the relation of landlord and tenant and the parties execute this intent by acts which are tantamount to a stipulation to put an end to the lease." Lott v. Chaffee, 1924, 46 R.I. 242, 126 A. 559, 560.

Many circumstances have been weighed in the cited cases and others in determining whether surrender and acceptance have taken place. Merely turning the key over to the landlord for purposes of repair does not suffice. See Smith v. Hunt, supra. Notice by the landlord of his intent to hold the lessee to his obligation under the lease will generally prevent a finding of surrender and acceptance. See Lott v. Chaffee, supra. The fact that after abandonment, the landlord showed the premises to others and advertised it for rent did not release the tenant. Lott v. Chaffee, supra. On the other hand, an actual reletting of the premises without notice to the tenant and absent facts showing his knowledge or assent operated as acceptance of surrender and released the tenant from further obligation. McGinn v. B. H. Gladding Dry Goods Co., 1917, 40 R.I. 348, 101 A. 129. See Lott v. Chaffee, supra. Where the tenant told the landlord he was moving out, that the landlord might show the premises to others and the landlord neither objected to the moving nor told the tenant that he intended to hold him on the lease, but rather accepted the keys and put a "to let" sign in the window and relet the premises, it was held that there had been a surrender and acceptance. White v. Berry, 1902, 24 R.I. 74, 52 A. 682.

On balance, it seems to me that a surrender and acceptance took place. The question is a close one. Lincoln, on the one hand, had a right to advertise and show the premises to prospective tenants. On the other hand, it could not without notice or in the absence of facts indicating knowledge and consent thereto on the part of the former occupant relet to a new tenant during the period of the tenancy and still retain its claim for rent. Permitting a prospective tenant to enter and commence operations seems to fall somewhere between these two situations.

The basis of the decision in the McGinn case does not appear to be the inequity of double recovery by the landlord should he prevail, but rather that the new relationship into which he entered was inconsistent with the prior lessee's right to use and possession.

While the occupancy of the plant by agents of Kenyon is not as obvious an inconsistency or as clear a manifestation of intent, the assent of Knibb to its occurrence constitutes substantial evidence of acceptance of surrender. The witness Baxter testified that he received no notice of the presence of the Kenyon enterprise, but heard of it through his other business dealings. The facts do not seem to warrant the conclusion that he consented to their occupancy under circumstances whereby his company would remain liable for rent. The letter of May 23, 1957, from Mr. Baxter to Mr. Knibb precludes such an inference.

It is also significant that no vigorous protest or formal demand was made upon Baxter by Lincoln for the balance of the rent which, while not being made available to them as cash on hand, would have reduced their tax load. It might be noted here that in the above-cited cases which were decided in favor of the landlord, notice, either oral or written, was given to the tenant of the landlord's intention to hold the tenant on his lease and not to permit early termination. Here, on the contrary, Mr. Knibb may have led Mr. Baxter to believe he desired early termination.

On the state of the disputed facts, it is my view that the actions of the parties would likely reflect the true situation as existed between them. The Government has imposed upon it the burden of proof and I am unable to say that the probabilities favor it on the state of the record.

This proceeding has been directed wholly toward recovery against Baxter Woolen Company, Inc.; judgment by default having been entered against Lincoln Mills Company.

I find for the defendant Baxter Woolen Company, Inc., and judgment will be entered accordingly.