**UNITED STATES, for Use and Benefit of WORTHINGTON PUMP & MACHINERY CORPORATION, v. JOHN A. JOHNSON CONTRACTING CORPORATION et al.**

No. 8380.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 2, 1943.

Decided Dec. 8, 1943.

Before BIGGS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

Worthington Pump and Machinery Corporation, plaintiff, brought suit against John A. Johnson Contracting Corporation and the American Surety Company to recover the price of materials delivered to a construction project at Fort Dix, N.J. The amount of the claim is undisputed. The Johnson Corporation was the principal contractor pursuant to a contract with the United States. The American Surety Company was the surety required under the Miller Act, 40 U.S.C.A. § 270a. The sole question for our determination is whether there is a contractual relationship, express or implied, between Worthington and the contractor. If there is, then the suit is allowed by the statute. Id. § 270b. If there is not, Worthington cannot maintain this action, it having failed to give timely notice. Ibid. The trial judge, sitting without a jury, found a contractual relationship and gave judgment for the plaintiff. The contractor and surety appealed.

The War Department in 1940 sent out an informal invitation for bids, number 180, for certain equipment, including a feed water heater and a boiler feed pump, to be delivered to Fort Dix. Worthington, on December 27, 1940, submitted a bid for one feed water heater and one boiler feed pump. The War Department, on December 31, 1940, wrote, in response to Worthington that its bid was "accepted" for one feed water heater and two boiler feed pumps. It authorized Worthington to proceed with the manufacture of the equipment and stated further, "Confirming purchase order will be issued by the construction contractor, George A. Fuller Company, and the necessary instructions as to marking bills of lading and rendering of invoices will be furnished you by the contractor." On January 6, 1941, Worthington acknowledged the War Department's last letter and stated it was proceeding with the manufacture of the items.

On January 9, 1941, the United States and the Johnson Contracting Corp.,[1] entered into a written contract whereby the latter agreed to furnish all the labor and materials and to perform all the work re-

Edward H. Cushman, of Philadelphia, Pa. (Frederic C. Ritger, of Newark, N. J., on the brief), for appellants.

Andrew B. Crummy, of Newark, N. J., for appellee.

---

[1] The contract was made in the name of "J. A. J. Construction Company, Inc.," which however, on or about December 24, 1941, changed its name to John A. Johnson Contracting Corp.

quired for the construction and completion of temporary housing for a General Hospital at Fort Dix. Clause 26, of this contract, provided, inter alia, " * * * The Government shall make available to the contractor a source of supply from which the contractor can obtain the boilers, stokers and controls, feed water heater, * * * [etc.] called for in the contract at a total cost of $50,000." Johnson furnished a bond, as required by the Miller Act, with the American Surety Company as surety. On January 8, 1941, Johnson entered into an agreement with Harry Knecht Company whereby Knecht agreed to furnish the labor, material and equipment for the entire heating and ventilating system at the Fort Dix Hospital. There was a clause in this contract similar to clause 26, above.

Worthington received a number of communications confirming the War Department's order. These were, (1) a letter dated January 14, 1941, from Knecht, sent to Worthington's Philadelphia office, (2) a telegram dated January 21, 1941, from Johnson, sent to Worthington's Washington office, (3) a letter from Johnson dated January 27, 1941, also sent to the Washington office. On the 23rd of January it had received a letter from the War Department notifying it that the contractor was not George A. Fuller, as previously stated but "J. A. Jones Construction Company." Subsequent correspondence made it clear that the correct name was "J.A.J. Construction Company" and Johnson, not Jones.

All the subsequent dealings of Worthington were with Knecht. The goods were consigned to "George A. Fuller Company, c/o Harry Knecht Company, c/o Construction Quartermaster, Fort Dix, New Jersey."[2] The bill of lading shows they were received by the carrier at Harrison, N.J., January 31, 1941. Statements were sent to Knecht and charges on the books were made against Knecht. Payment was asked from Knecht. In July, 1941, Worthington wrote Johnson asking what was holding up Johnson's payments to Knecht and stating that Knecht had not paid for

the equipment. This suit was then brought against Johnson and its surety.

The question is whether in these facts there is to be found a contractual relationship between Worthington and Johnson. Taken step by step, what was the effect of the various communications? The War Department's informal invitation to bid was not an offer. But Worthington's answer was an offer to the War Department. The latter's response was not an acceptance, however, since it changed the terms of the offer in two respects. It ordered two boiler feed pumps instead of one. It told Worthington that the order was to be confirmed by the contractor, Fuller. This Worthington answered on January 6, saying it was proceeding with manufacture. We need not decide in this case whether Worthington's answer gave rise to a contract between Worthington and the government. In any event it indicated that Worthington was willing to do business on the terms stated. It is clear from the evidence that the War Department by the contract of January 9 passed along to Johnson the proposition Worthington had signified it would undertake as shown by the quotation from clause 26. Johnson's letter and telegram of confirmation to Worthington were a clear manifestation of its desire to obtain the equipment from Worthington upon the terms agreed upon between Worthington and the government. We construe Johnson's telegram and letter to Worthington, in view of these facts, to be an offer made in accordance with those terms. If, then, this offer was accepted by Worthington, we have the contractual relationship requisite to the maintenance of this action.

■ Was there an acceptance? There was no subsequent written or oral communication from Worthington to Johnson which would constitute an acceptance. However, Worthington did manufacture and furnish the equipment to the Fort Dix project. The equipment was shipped just a few days after the confirmation orders from Johnson were received. We think that Johnson's offer was accepted by Worthington's performance in furnishing

---

[2] The trial judge found as a fact that the advice concerning billing was received "too late". This advice was contained in the Johnson letter of January 27, which was sent to the Washington office. Defendants contend that there was no evidence in the record to support this finding. However, it is to be noted that the Johnson letter was *mailed* to Worthington's Washington office on January 27 and the equipment was *received* by the carrier at Harrison, N. J., where Worthington had its works, on January 31.

the equipment ordered. This conclusion is supported whether the transaction is treated in either one of two possible ways. On these facts it would not be improper to say that Johnson's order, like any other order for the purpose of delivery of goods, was an offer inviting a unilateral contract which the offeree (Worthington) accepted by the shipment of the goods. On this theory the contractual relationship between the parties is established on the simplest possible basis and the rule of law is too well established to require a citation. Alternatively, Johnson's letter to Worthington might be termed an offer inviting a bilateral contract for which Worthington's acceptance might be expected to be a promise to perform the execution of the order for the goods as outlined in its correspondence with the government. But instead of replying with a promise Worthington replied with peformance forthwith, that is, the shipment of the specified goods. Such a performance or tender of performance constitutes the completion of a contract. See 1 Restatement, Contracts (1932) § 63; 1 Williston on Contracts (Rev.Ed., 1936) § 78A, citing Becker v. Kelsey, 1931, 157 A. 177, 9 N.J.Misc. 1265. Gilchrist Co. v. Metal Polishers, Buffers & Platers Local Union No. 44 of Metal Polishers International Union, N.J. Ch. 1919, 113 A. 320.

The defendants have made much in their argument of the fact that Worthington sent statements and claim letters to Knecht, entered charges upon its books solely against Knecht and did not communicate with Johnson until July. Worthington's dealings, it is said, indicate that it did not contract with Johnson. It is also clear, however, that Worthington had specific and numerous letters from the War Department and Johnson that the latter was the principal contractor who was to be charged for the equipment. Why Worthington failed to do so is not explained. We think it does not matter. The goods had been shipped and received. If we are correct that the contract relationship had been established, as indicated above, the failure to write more letters does not change it.

Defendants' final argument is that Johnson's contract with Knecht and Knecht's subsequent dealings with Worthington effected a novation whereby Knecht was substituted for Johnson and became the sole debtor of Worthington. However, one of the essential elements of a novation, is that the creditor, (Worthington) agree that the third party (Knecht) be substituted for the debtor (Johnson) so that the debtor is completely discharged. 2 Restatement, Contracts (1932) § 424; 6 Williston on Contracts (Rev.Ed. 1938) §§ 1865, 1870. We find nothing here to show that Worthington assented to any substitution of Knecht for Johnson. Worthington's dealings with Knecht fall far short of showing this. Worthington may well have become a creditor beneficiary as result of the Knecht-Johnson contract, but that would not discharge Johnson. 2 Restatement, Contracts (1932) § 428, comment a.

Affirmed.