52 N.J. Super. 299 (1958)
145 A.2d 471
JEAN COMERATA, PLAINTIFF-APPELLANT,
v.
CHAUMONT, INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1958.
Decided October 23, 1958.
*301 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Leo B. Mazer argued the cause for plaintiff-appellant (Mr. Edward O. West, attorney).
Mr. Leonard Adler argued the cause for defendant-respondent (Mr. Edward Marshall and Mr. Harry Schwartz, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff's complaint in the Bergen County District Court seeks the return of $500 paid by her to the defendant as a deposit in relation to a proposed contract and lease for a check room concession. It is averred that the parties agreed that if the terms of a written contract to be submitted to plaintiff by the defendant were not satisfactory to her the deposit would be returned; that this eventuated but that the defendant nevertheless was refusing to return the money.
*302 The proofs show a somewhat different situation. The defendant corporation was about to open a new restaurant and needed a check room attendant. On December 10, 1957 the defendant's officers discussed with plaintiff a proposal for her to lease the concession for the check room for one year from the opening date, December 17, 1957, at a rental of $1,000, and plaintiff paid a $500 deposit against the rental, taking a receipt reading:
"Received from Jean Comerata, 7 Buckingham Court, Maywood, N.J., $500.00 Deposit on check room concession subject to contract and lease to be drawn."
The testimony given on behalf of both sides makes it fairly clear that the parties had an oral understanding at the time of the taking of the deposit not only as to the consideration and term of the lease, but also as to when the balance of the rent was to be paid. The testimony conflicted, however, as to what the latter stipulation was, the defendant contending it was February 1, 1958. Plaintiff at one point in her testimony said it was to be "sometime in February," and, at another, in February "or March." Plaintiff concedes that she also agreed orally to keep the premises "clean and sanitary" and in "excellent order" and to pay for fire, theft and liability insurance and turn the policies over to the lessor. She also said it was agreed that she might sell cigars, but not cigarettes, and that she was to keep the check room open at all restaurant hours.
On December 17, 1957, opening date of the restaurant, plaintiff went into possession and operation of the check room. The next day an officer of the defendant tendered her a written agreement for execution, and she advised him that she would have a lawyer look it over for her. Mr. Bernkoff, treasurer of defendant, testified that defendant never heard from plaintiff concerning the draft of agreement, but that after four days of attendance she failed to return to the premises without explanation. Plaintiff's testimony was that after consultation with a lawyer and finding several provisions in the proffered writing not in accordance *303 with the oral understanding, she asked the president of the defendant for the return of her $500 for the reason that the draft of agreement "was not satisfactory." There was no testimony by plaintiff that at the time she specified the portions of the writing which were not in accord with the oral understanding or that she requested that the instrument be amended to conform thereto.
Plaintiff testified that the following provisions of the draft were contrary to the oral agreement: (1) that the balance of $500 be paid February 1, 1958, failing which the agreement was to be nullified and the $500 deposit retained by the lessor; and (2) that failure to keep the place in excellent order and to conduct it in an orderly and respectable manner to the satisfaction of the lessor would nullify the contract and forfeit any moneys already paid.
Plaintiff realized net receipts from tips and cigar sales of either $35 or $45 during the four days she ran the check room. The restaurant closed down February 4 or 5, 1958, apparently for lack of business, and the defendant had the property listed for sale at the time of the trial, in March 1958.
The oral determination of the trial judge, sitting without a jury, was as follows:
"Of course the original arrangement between these parties is merely a deposit received for $500 subject to a lease and agreement to be drawn. So that it is necessary in order for the plaintiff to be successful, to establish what the terms of that lease, agreement were and whether those terms were met in the proposed document that was presented. She has testified as to what they were in her opinion and what she objected to in the document which was presented. The defendant has contradicted her testimony in respect to the items which she says she objected to. There is no corroboration on the part of either party. Frankly, under the circumstances, I can't feel that the plaintiff has established her case and there will be a judgment for the defendant."
The first two sentences of the foregoing determination appear on the surface to be in conflict but may be reconciled in the light of the complaint, and plaintiff's opening at the trial, which conformed thereto. From these it appears that *304 plaintiff's theory of recovery was that it was expressly agreed that the $500 deposit should be returned if defendant failed to present a written agreement according with the oral understanding, and that defendant having tendered a writing conflicting with the understanding (as to time of payment of balance) and also containing provisions not discussed (forfeiture provisions), plaintiff had a cause of action on the express undertaking. The determination of the trial court is thereby illuminated as a finding of fact against plaintiff on her contention that there were discrepancies between the oral understanding and the writing tendered.
While there was directly conflicting testimony as to whether the oral understanding called for the second $500 payment to be made on February 1, 1958, the defendant did not refute plaintiff's testimony that the forfeiture provisions and the stipulation for the method of operation to be to the satisfaction of defendant were not a part of the understanding. It does not follow, however, that this circumstance compels a conclusion that plaintiff established the case she pleaded on the alternative theory  that even if the payment date orally agreed to was February 1, 1958, the inclusion of the admittedly new provisions in the draft constituted a breach of the arrangement between the parties. Defendant merely submitted a proposed draft. Before it could be regarded as having breached the understanding plaintiff says existed it would reasonably have been necessary for plaintiff not only to take exception to the objectionable provisions but to call upon defendant to eliminate them. Only if defendant failed to do so would a breach mature. Plaintiff's treatment of the mere tender of the allegedly nonconforming draft of contract as a breach of contract and terminating the relationship solely on account of it was unjustified and made the plaintiff the defaulter, even were we to concede the truth of plaintiff's pleaded version of the express agreement between the parties. See Kurtz v. Busch, 3 N.J. Misc. 389, 391 (Sup. Ct. 1925); cf. Morris v. Ballard, 56 App. D.C. 383, 16 F.2d 175, 176, 49 A.L.R. 1461 (D.C. Ct. App. 1926).
*305 On this appeal, however, plaintiff's principal contention is that the parties did not intend to be bound at all unless a formal contract were drawn and executed; and since that contingency never eventuated plaintiff was free at any time and for any reason to terminate the negotiations and have her deposit back. The rule relied upon is exemplified by such cases as Trustees of First Presbyterian Church in Newark v. Howard Co.  Jewelers, 12 N.J. 410 (1953); Moran v. Fifteenth Ward B. & L. Ass'n., 131 N.J. Eq 361, 367 (Ch. 1942); Stuart & Wood Inc., v. Palisades, etc., Corp., 109 N.J. Eq. 401 (Ch. 1931). However, parties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking. See the case last cited (109 N.J. Eq. at page 404); Zuendt v. A. Eisenstein, Inc., 139 N.J. Eq. 476 (Ch. 1947); 1 Williston on Contracts (rev. ed. 1936), §§ 28, 28A, pp. 59 et seq. The ultimate question is one of intent. Ibid. Moreover, the fact that parties who are in agreement upon all necessary terms may contemplate that a formal agreement yet to be prepared will contain such additional terms as are later agreed upon will not affect the subsistence of the contract as to those terms already unqualifiedly agreed to and intended to be binding. 1 Corbin on Contracts (1950), § 30, p. 83. In the present case, were there no evidence relevant to the existence of a consensual understanding between the parties on December 10, 1957 aside from the written receipt given for the $500 deposit, the language thereof would fairly compel a conclusion against the existence of a binding compact until the formal contract should be executed. Cf. Hobelman v. Cavallo, 102 N.J. Eq. 243 (E. & A. 1928). But here there is not only cogent evidence that the parties had an oral understanding on the basic essentials of a contract (notwithstanding their testimony is in disagreement as to what date for payment of the balance they then agreed upon), *306 but plaintiff entered into possession of the premises and performance of the contract and accepted benefits therefrom.
It is strongly implied in the New Jersey cases that even where parties, having agreed upon all the terms of their contract, mean to have them reduced to writing and signed before being bound, they will nevertheless become bound if substantial acts are performed under the agreement by either side. Donnelly v. Currie Hardware Co., 66 N.J.L. 388, 389 (Sup. Ct. 1901); Water Commissioners of Jersey City v. Brown, 32 N.J.L. 504, 510 (E. & A. 1866), both cases cited for this point in 1 Williston, op. cit., supra, p. 60, n. 4. The undertaking of performance, concurred in by the other party, is generally taken as strongly probative of an intention on the part of parties who have orally agreed to terms of a contract to be bound thereby notwithstanding the later execution of a formal contract is contemplated. 1 Corbin, op. cit., supra, § 30, pp. 81, 82, citing Levine v. Lafayette Bldg. Corp., 103 N.J. Eq. 121 (Ch. 1928), reversed 105 N.J. Eq. 532 (E. & A. 1930), and see Priest v. Oehler, 328 Mo. 590, 41 S.W.2d 783 (Sup. Ct. 1931); Power Service Corp. v. Joslin, 175 F.2d 698 (9 Cir. 1949); Empire Steel Bldg. Co. v. Harvey Machine Co., 122 Cal. App.2d 411, 265 P.2d 32 (App. Ct. 1954); Branca v. Cobarro, [1947] 1 K.B. 854.
We regard the oral determination by the trial court to imply a finding, albeit imperfectly stated, that the parties had a definite oral understanding with respect to a lease-agreement. To the extent that the expression of the court may be regarded as not sufficiently explicative of such a finding we herewith make such a finding of our own in the exercise of our original jurisdiction. We consider the parties intended to be bound to the extent of the items they agreed upon notwithstanding it was contemplated that additional, less essential matters might be incorporated in the formal agreement later to be signed.
It thus next becomes necessary to consider which party was in breach of the oral contract. Subsidiary to this inquiry is the question as to what the terms of that agreement *307 were. In order for plaintiff to establish a default it was incumbent upon her as proponent of the issue to sustain the burden of proof as to her version of the disputed essentials of the contract. See Collins Realty Co. v. Sale, 104 N.J. Eq. 138, 142 (E. & A. 1929). We consider that the matter of the date for payment of the $500 balance was an essential element of the bargain agreed upon. But plaintiff's case falls with the trial court's determination that she failed to sustain her burden of proof, as that finding was justified as to this particular by the evidence. In any event, for reasons discussed earlier herein, it was incumbent upon plaintiff to demand a writing incorporating her version of this condition and get a rejection thereof from the defendant before peremptorily rescinding the contract relationship in the manner she did.
Notwithstanding all of the foregoing unfavorable results of divers explorations of plaintiff's rights against defendant on hypotheses of breach of contract by defendant, there remains for consideration whether a basis for recovery of at least part of plaintiff's deposit may be laid in the quasi-contract theory of restitution founded upon an unjust enrichment of the defendant through its retention of the entire deposit.
There is much discussion in the authorities as to the right of one who has materially broken his contract without legal excuse to recover for such benefit as he may have conferred on the other party by part performance. 5 Williston, op. cit., supra, § 1473, p. 4118; 5 Corbin, op. cit., supra, § 1129, p. 572. Much of the conflict in the authorities arises from the collision of two fundamental legal philosophies  one, that a defaulter, particularly where willful, ought not to be allowed to force a sale of his part performance upon another party who has bargained for full performance; and, two, that the law abhors excessive compensation or forfeiture for breach of contract. 5 Williston, ubi cit., supra. So far as is relevant in the present factual context the Restatement of Contracts, § 357, would allow the defaulting plaintiff recovery for the "net benefit" of his performance to the defendant in *308 excess of the harm caused by the breach if either (1) the breach was not willful or deliberate or (2) the defendant retains property received although its return in specie is still not unreasonably difficult or injurious. Where plaintiff's performance is the payment of "earnest money" or (sic) if the contract provides that it may be retained and it is not so greatly in excess of the defendant's damages as to amount to a penalty recovery will not be allowed. Ibid. An approval of the rule of the Restatement, if understood to make the penalty proviso applicable to deposits even where there is no stipulation for retention in the event of payor's default, is implied in Bernstein v. Rosensweig, 1 N.J. Super. 48, 53 (App. Div. 1948). The holding in that case was against a defaulting vendee suing for the return of a deposit which was less than one per cent of the purchase price. See also McEnaney v. Spedick, 13 N.J. Super. 37 (App. Div. 1951). Cf. Dorman v. Fisher, 52 N.J. Super. 70 (App. Div. 1958).
In the case before us, notwithstanding the restitution theory was not urged at the trial or on the appeal, its pertinence in the factual setting presented is so obvious as to call for a retrial of the case on that theory of recovery as a matter of substantial justice. The defendant retains one half of the consideration bargained for a full one-year concession after occupancy by the plaintiff for only four days. Moreover, the defendant's venture collapsed in less than two months.
The cause will be remanded for retrial solely on the issue of whether there should be a recovery on the quasi-contract theory hereinabove discussed, and, in the event of an affirmative determination, as to defendant's damages, if any, properly deductible from the deposit.
Reversed; no costs.