838 A.2d 490 (2004)
365 N.J. Super. 114
James P. McBARRON and Tara M. McBarron, Plaintiffs-Appellants,
v.
KIPLING WOODS L.L.C. and Barry Jost, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 2003.
Decided January 2, 2004.
Appellant James P. McBarron, Esq., argued the cause pro se.
Dwight P. Ransom, Esq., argued the cause for respondents.
Before Judges CIANCIA, ALLEY and COLEMAN.
The opinion of the court was delivered by CIANCIA, J.A.D.
Plaintiffs James P. and Tara M. McBarron, husband and wife, appeal a summary judgment dismissing their complaint against defendants Kipling Woods L.L.C. (Kipling Woods) and Barry Jost. Plaintiffs sought to enforce an oral contract to purchase *491 unimproved land from defendants. We are satisfied that there were issues of material fact that precluded disposition of the case on summary judgment. Brill v. Guardian Life Ins. Co. of America., 142 N.J. 520, 540, 666 A.2d 146 (1995).
Effective January 5, 1996, the Statute of Frauds was amended to eliminate the requirement that a contract for the sale of real property must be in writing. L. 1995, c. 360, § 4. N.J.S.A. 25:1-13 now provides:
An agreement to transfer an interest in real estate or to hold an interest in real estate for the benefit of another shall not be enforceable unless:
a. a description of the real estate sufficient to identify it, the nature of the interest to be transferred, the existence of the agreement, and the identity of the transferor and transferee are established in a writing signed by or on behalf of the party against whom enforcement is sought; or
b. a description of the real estate sufficient to identify it, the nature of the interest to be transferred, the existence of the agreement and the identity of the transferor and the transferee are proved by clear and convincing evidence.
The problem in the present case is that the parties agreed that some document was to be drawn up, but defendants reneged on the transaction before that occurred. The trial court acknowledged that the issues turned on the intent of the parties. It concluded, however, that "plaintiffs have only shown, at best, an oral agreement conditioned upon the drafting and execution of a written agreement." Because both parties agreed that a form of writing was anticipated, the trial court concluded there was no valid oral contract.
Plaintiffs correctly point out that the mere anticipation of a written memorialization of an oral agreement does not as a matter of law vitiate an oral contract if the elements of a contract are contained in the oral agreement.
Over forty-five years ago, Judge Conford, joined by Judges Goldmann and Freund, stated:
On this appeal, however, plaintiff's principal contention is that the parties did not intend to be bound at all unless a formal contract were drawn and executed; and since that contingency never eventuated plaintiff was free at any time and for any reason to terminate the negotiations and have her deposit back.... However, parties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking. See [Stuart & Wood, Inc. v. Palisades Prop. & Operating Corp., 109 N.J. Eq. 401, 404, 157 A. 659 (Ch.1931).]; Zuendt v. A. Eisenstein, Inc., 139 N.J. Eq. 476, 51 A.2d 898 (Ch.1947); 1 Williston on Contracts (rev. ed. 1936), §§ 28, 28A, pp. 59 et seq. The ultimate question is one of intent. Ibid.

[Comerata v. Chaumont, Inc., 52 N.J.Super. 299, 305, 145 A.2d 471 (App. Div.1958).]
This statement of the law remains valid today. Pascarella v. Bruck, 190 N.J.Super. 118, 126, 462 A.2d 186 (App.Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983); Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J.Super. 369, 373-374, 346 A.2d 419 (App.Div.1975); accord Marilyn Manson, Inc. v. New Jersey Sports & Exposition Auth., 971 F.Supp. 875, 888 (D.N.J.1997). We find no reason to treat oral contracts for the sale of property differently from other oral contracts.
*492 In light of this understanding of the law, whether a valid oral contract was made or whether oral agreements were intended not to bind the parties until a written contract was executed, is solely a matter of intent determined in large part by a credibility evaluation of witnesses. The cases are legion that caution against the use of summary judgment to decide a case that turns on the intent and credibility of the parties. Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291, 544 A.2d 377 (1988); Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 76, 110 A.2d 24 (1954); Ricciardi v. Weber, 350 N.J.Super. 453, 470, 795 A.2d 914 (App.Div.2002), certif. denied, 175 N.J. 433, 815 A.2d 479 (2003); Carmichael v. Bryan, 310 N.J.Super. 34, 47, 707 A.2d 1357 (App.Div.1998); G & W, Inc. v. Borough of East Rutherford, 280 N.J.Super. 507, 514, 656 A.2d 11 (App.Div.1995); Shanley & Fisher, P.C. v. Sisselman, 215 N.J.Super. 200, 212, 521 A.2d 872 (App.Div.1987).
Here, plaintiffs' case in its most favorable light, as set forth primarily through the certification of James P. McBarron, a New Jersey attorney, showed the following.
There was a long course of dealings between the parties that began in 1998 and related to plaintiffs' desire to purchase a lot in a particular subdivision. The lots under consideration were owned by defendant Kipling Woods and included lot 21.04. As of November 2, 2001, plaintiffs had been pre-approved by two different mortgage companies and had $100,000 in cash. No mortgage contingency was required. Defendant Jost expressed a willingness to sell a lot to the plaintiffs. Mr. McBarron's certification goes on:
16. During that morning meeting on November 2, 2001, Jost reiterated to me that my wife and I were "like family" and that we would therefore be given first crack at Lot 21.04 once a price was determined. Jost indicated that he wanted to speak with his brothers before setting a final price. Jost indicated that he would speak with his brothers and call me back later that day with the final asking price for Lot 21.04.
17. On the afternoon of November 2, 2001, Jost called me at work, indicated that he had spoken with his brothers, and stated that the asking price for Lot 21.04 was $185,000.00. I advised Jost that my wife and I accepted that offer. I then asked Jost if the transaction was a "done deal". Jost said "definitely". Jost then confirmed on two additional occasions during that telephone conversation that the transaction was "a done deal". Jost repeated that my wife and I were "like family". At the end of that telephone conversation, I inquired as to whether Kipling Woods wanted a written contract to memorialize the agreement that had been reached or whether we would simply proceed toward a closing. Jost indicated that he would ask defendants' attorney, Richard Maguire, Esq., to "draw up" the agreement that had been reached. I stated that I had no problem with that concept but indicated that I considered the parties to have already reached an agreement. Jost reassured me in that regard and agreed that the deal was done.
18. Following the long-awaited agreement to purchase one of the subdivided lots, my wife and I spent the weekend of November 3, 2001 and November 4, 2001 speaking with several builders regarding the type of home we wanted to construct on Lot 21.04.
19. On November 6, 2001, Jost called me and referenced that he had received a $190,000.00 offer for Lot 21.04 from his friend, Jeff Woszczak. However, *493 Jost advised me that "because we already had a deal, I'll honor it."
20. During that same telephone call on November 6, 2001, Jost asked me if it was o.k. to give my telephone number to Mr. Woszczak, who is also a homebuilder. Jost indicated to me that he had informed Mr. Woszczak that my wife and I were the contractual owners of Lot 21.04 and that Mr. Woszczak therefore could not buy that property. However, Jost also had told Mr. Woszczak that my wife and I needed someone to build our home on Lot 21.04, which was true. I gave Jost permission to provide my work telephone number to Mr. Woszczak.
Defendants, however, received a significantly higher offer from an entity known as Silverwood Associates, Inc., for lot 21.04 and other lots, as part of a package deal. Defendants then began to renege on the agreement with plaintiffs. The McBarron certification continues:
24. On November 13, 2001, Jost and I again spoke on the telephone. I recorded that telephone conversation. During that conversation, Jost again confirmed that the parties had had a deal regarding Lot 21.04. Jost indicated that despite the deal that had been reached between the parties, defendants could not turn down the additional sum of money being offered by Silverwood Associates, Inc. and would therefore refuse to honor the deal. The conversation included the following exchange:
JIM McBARRON: Yeah, I mean I understand wherewhere you're coming from, but the problem is we had a deal.
BARRY JOST: Right.
JIM McBARRON: I mean, you called me up with the price of $185,000.00. I said yes. Uh, and then, you know, I said is that a done deal and you said, yes, like three times.
BARRY JOST: Yeah.
JIM McBARRON: So I thought we were done.
BARRY JOST: Yeah, and, uh, we were done. We were definitely done....
....
25. At another point during the November 13th telephone call, Jost mentioned his discussion with his four brothers following defendants' receipt of the November 6, 2001 offer from Silverwood Associates, Inc. Jost stated as follows: "I was like, well, we got a deal on the one. They don't want to hear it, you know?" Jost suggested that he was outvoted as to whether or not to honor the deal that had been made with me and my wife....
26. On November 20, 2001, I called Jeff Woszczak, the builder who had offered to construct our home on Lot 21.04. Mr. Woszczak reiterated to me during that telephone conversation that Jost had told Mr. Woszczak that Lot 21.04 had been sold to me and my wife.
27. It was the intent of my wife and me to be bound by the oral contract that had been reached between the parties on November 2, 2001.
28. Jost likewise indicated an intent for Kipling Woods to be bound by that oral contract. Jost's actions and statements to others confirm that fact. It was not until a subsequent, much higher offer was received 4-5 days later that defendants refused to honor the deal they had reached. Jost's own statements suggest that even he knew that a deal had been reached, but that he was simply outvoted by his brothers who refused to honor the deal.
*494 If these facts were credited by a trier of fact, they could certainly support a finding by clear and convincing evidence that the parties entered into an oral contract for the sale of lot 21.04 that was not dependent upon a subsequent written instrument. In terms of the Statute of Frauds, plaintiffs' proofs, if credited, could be found to establish by clear and convincing evidence the agreement, the identity of the parties, the nature of the interest to be transferred, and a sufficient description of the property.
For these reasons we are persuaded that summary judgment dismissing plaintiffs' complaint was erroneously granted. The judgment in favor of defendants is reversed and the matter is remanded for further proceedings consistent with this opinion.