

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-2007

# West v. IDT Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4023

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"West v. IDT Corp" (2007). *2007 Decisions*. Paper 716.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/716

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

Nos. 05-4023, 06-2928 and 06-3000

————

ALFRED WEST,
                              Appellant

v.

IDT CORPORATION; IDT TELECOM, INC.

————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 01-cv-04372
District Judge:  The Honorable William H. Walls

————

Submitted Under Third Circuit LAR 34.1(a)
June 26, 2007

————

Before: BARRY, FUENTES, and JORDAN, <u>Circuit Judges</u>

(Opinion Filed: July 20, 2007)

————

OPINION

————

BARRY, <u>Circuit Judge</u>

Appellant, Alfred West, brings this appeal challenging, among other things, the

District Court's grant of summary judgment to IDT Corporation and IDT Telecom, Inc.

(collectively, "IDT") on West's breach of contract claim.  Because we find that this was error, we will reverse and remand for further proceedings.

## I.

In February 2001, West, who at the time had recently served as Vice Chairman of Viatel, Inc., met with Howard Jonas, IDT's Chief Executive Officer and Chairman of its Board of Directors.  The meeting resulted in a two-page agreement ("the agreement"), which was handwritten by Jonas and signed by both Jonas and West.  The agreement provides:

> IDT and Alfred West agree that
> 1)     IDT will pay West $200,000 per year for 5 years
> 2)     Alfred will work exclusively for IDT for 5 years
> 3)     IDT will in six months buy "Westco" a business to be incorporated which will contain all West's intellectual property e.g. presto and debit card business (mostly european) and any rights due from Viatel
> 4)     If Viatel rights not transferable West will sell to IDT at cost.  For next six months West will rent intellectual property for $1 for next six months
> IDT will pay 70,000 shares and one and a half million dollars cash each year for 5 years (or stock at West's option) to be paid in advance (first date of each year starting Feb. 13, 2001 and ending Feb. 13, 2005 (equates to roughly $14,300,000 today
> 5)     The parties will complete formal contracts as soon as possible but this is binding
> 6)     West may quit if unhappy after 3 full years and payout will continue regardless
> 7)     Final agreement will be structured so as to best minimize taxation for all parties.

App. at 319.  Following the signing of the agreement, West began working at IDT and received a salary. App. at 4829–30.  The nature and quality of the services he rendered are disputed as are the representations made by IDT regarding his hiring and the intent of

2

the parties regarding the binding nature of the agreement. See App. at 499–508, 609–20, 662–70, 3650, 3680, 3774–75, 4829–30, 4402–03.  It is undisputed, however, that IDT never made the February 13 payment contemplated by the agreement, the "formal contracts" envisioned by the agreement were never entered into, the relationship between the parties soured, and West was ultimately terminated in August 2001.

West brought this action alleging causes of action for, among other things, breach of contract, breach of the implied covenant of good faith and fair dealing, misrepresentation, promissory estoppel, and quantum meruit.

By letter order dated July 14, 2004,[1] the District Court granted summary judgment for IDT on West's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and misrepresentation.[2] App. at 87–113.  Despite finding that "many facts regarding what happened at [the February 2001] meeting are heavily disputed," the Court, applying the Second Circuit's approach to preliminary agreements in Adjustrite Systems, Inc. v. GAB Business Services, Inc., 145 F.3d 543 (2d Cir. 1998), concluded that the agreement "is not a binding contract, but is an 'agreement to agree.' "

---

[1] This action was initially disposed of via letter order dated December 30, 2003 and amended letter order dated January 20, 2004. App. at 40–50. By order dated March 29, 2004, we summarily reversed the District Court and instructed it to consider all of the claims in West's complaint and to provide a sufficient explanation for the grant of summary judgment. See West v. IDT Corp., No. 04-1152 (Mar. 8, 2004).

[2] Summary judgment was also granted as to several other causes of action, but the propriety of those rulings has not been appealed. See Appellant's Br. at 2–3.

App. at 88, 91.[3]  The Court allowed West's promissory estoppel and quantum meruit claims to go to trial, finding that there were material factual questions about the nature of the promises in the agreement, the credibility of the parties regarding their intent, and the value and quality of the services performed by West. App. at 98–102.  Following a jury verdict for West in the amount of $1.5 million on his quantum meruit claim, the Court set aside the verdict and entered judgment for IDT as a matter of law. App. at 67–84; West v. IDT Corp., No. 01-4372, 2006 U.S. Dist. LEXIS 33204 (D.N.J. May 25, 2006).

West timely appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

**II.**

Our review of a district court's order granting summary judgment is plenary. Reese Bros. v. United States, 447 F.3d 229, 232 (3d Cir. 2006).  We "may affirm the district court's order if, when viewing the evidence in the light most favorable to the non-moving party, there is 'no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " Id. (quoting Fed. R. Civ. P. 56(c)).

It is clear, at least to us, that on the record before it, the District Court should not have granted summary judgment to IDT on West's breach of contract claim.[4]

---

[3] It is certainly worth mentioning that the District Court, in rejecting IDT's previous motion for summary judgment, found that the language of the agreement "is all but dispositive proof that the parties intended to be bound" and that "the significance of unequivocal language appearing prominently in the agreement that indicates the parties' intent to be bound cannot be understated." App. at 145a.

[4] Of course, on remand, if the District Court finds that the agreement was a binding contract, it will need to revisit its other rulings, which were based upon the non-binding

4

First, as the District Court pointed out on numerous occasions, including in its decision to deny summary judgment on the promissory estoppel and quantum meruit causes of action, there are several important factual disputes which bear on the binding nature of the agreement. Among these are whether the parties intended the agreement to be binding, whether their actions following the signing of the agreement, including their performance in conformance with the agreement and representations made to others, clarified any ambiguity as to their intent, and whether the terms of the agreement set forth all the important particulars of the relationship between them. These disputed facts must be, but were not, viewed in the light most favorable to West. See, e.g., Adjustrite, 145 F.3d at 551 (stating that the one factual dispute present was not sufficient to raise an issue for trial); Eisenberg & Levi v. Montague & Co., No. 90-8201, 1991 WL 167973, at *2 (S.D.N.Y. Aug. 22, 1991) (holding that competing inferences to be drawn regarding intention of parties precluded summary judgment); McBarron v. Kipling Woods LLC, 838 A.2d 490, 491–93 (N.J. Super. Ct. App. Div. 2004) (concluding that summary judgment was inappropriate where determining the intent of the parties was dependent upon credibility determinations); Comerata v. Chaumont, Inc., 145 A.2d 471, 475 (N.J. Super. Ct. App. Div. 1958); Levine v. Lafayette Bldg. Corp., 142 A. 441, 445 (N.J. Ch. 1928); Restatement (Second) of Contracts § 27 cmt. c. Although it is not clear that these

---

nature of the agreement. As such, we need not reach any of those issues on this appeal, including the District Court's grant of judgment as a matter of law for IDT on West's quantum meruit claim.

factual disputes are such that, after a proper application of New Jersey law, they would prevent partial summary judgment in West's favor on the question of whether the agreement is binding, it is quite clear that they prevent summary judgment against him.

Second, the District Court erred in concluding that the application of Adjustrite counseled in favor of granting summary judgment to IDT.[5] In Adjustrite, the Second Circuit discussed the four factors that should be used to determine whether a preliminary agreement, i.e., an agreement in which the parties contemplate the entering of more formal contracts in the future, is a binding contract or an unenforceable agreement to agree. Adjustrite, 145 F.3d at 547. These factors are:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Id. at 549 (quoting Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985)).

Applying these factors, the District Court determined that only the first two favored West's position that the agreement constituted a binding contract. Finding that the last two favored IDT, the Court weighed the factors and concluded that "qualitatively, the Adjustrite factors weigh against [West]," and it, therefore, determined that IDT was entitled to judgment as a matter of law. App. at 94. We disagree.

---

[5] We need not decide whether New Jersey law in this area, which both parties agree should be applied, is consistent with the New York law discussed in Adjustrite. The District Court did not discuss this in its letter order granting summary judgment and it should make this determination in the first instance upon remand.

6

As the District Court pointed out, the first factor is the most important, app. at 92, especially in light of the fact that "a party that does not wish to be bound at the time of the preliminary exchange of letters can very easily protect itself by not accepting language that indicates a 'firm commitment' or 'binding agreement,' " Teachers Ins. & Annuity Assoc. of Am. v. Tribune Co., 670 F. Supp. 491, 499 (S.D.N.Y. 1987) (Leval, J.). The agreement at issue here explicitly states that the parties "agree" and that, although "[t]he parties will complete formal contracts as soon as possible[,] . . . this is binding." App. at 319 (emphasis added). The Court also found that the second factor favored West because he "partially performed his obligations under the contract." App. at 92.

Despite these findings, the District Court, relying primarily on "the existence of open items or terms that remain open to be negotiated," concluded that the strength of the final two factors dictated a ruling in IDT's favor. App. at 92. The Court's analysis as to these factors, however, missed the mark.

In finding that there were essential terms omitted from the writings at issue in that case, the Adjustrite Court relied heavily on the absence of terms which would take effect in the event that a contemplated transfer of a license did not occur. Adjustrite, 145 F.3d at 550–51. The District Court echoed that sentiment, finding that "without full and exclusive rights to the intellectual property and assets required to run the 'presto and debit card business' contemplated in [the agreement], the transaction would have been of little value to [IDT]." App. at 93. The Court, however, failed to note that the agreement explicitly provided for what would happen in the event that "Viatel rights [are] not

7

transferable." App. at 319. Whether the happening of that contingency rendered the deal "of little value to [IDT]" is irrelevant, as the agreement itself specifically provides for what would happen if it did occur.

Similarly, the District Court found that "[t]he transaction involved a multi-million dollar acquisition of certain assets and intellectual property rights" and, therefore, "is the type of contract that is usually committed to writing." App. at 93. Although, again, this analysis mirrors that done in Adjustrite, it is inconsistent with the Second Circuit's previous discussion of that factor. As Judge Leval explained in Tribune Co., although "$80 million loans involving mortgages are generally not concluded by means of a four-page letter," the question to be asked is "whether the customary practices of the relevant financial community include according such binding force . . . to such preliminary commitment agreements." Tribune Co., 670 F. Supp. at 503; see also Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 72 (2d Cir. 1989). This analysis was not undertaken by the District Court.[6]

Regardless of the proper analysis to be performed in considering the final factor, it is clear that the District Court, in weighing the Adjustrite factors as applied to the facts of this case, erred in concluding that, as a matter of law, the agreement was not a binding contract, especially in light of the express language in the agreement to the contrary. See,

_____

[6] We need not determine the proper analysis that must be undertaken, especially in light of the fact that, strictly speaking, Adjustrite, as an explication of New York law, does not apply to this case.

8

e.g., Arcadian Phosphates, Inc., 884 F.2d at 72–73. On remand, the Court should determine the contours of New Jersey law, and, if similar to that discussed in Adjustrite, determine whether a fair and proper balancing of the relevant factors supports a finding in favor of West or whether genuine issues of material fact require that a trial be held to determine if the agreement constitutes a binding contract.

## III.

For the foregoing reasons, we will reverse and remand for further proceedings consistent with this opinion.