**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4386
_____

DANDANA, LLC,
                              Appellant
v.

MBC FZ-LLC,
a/k/a Middle East Broadcasting Services,
d/b/a/ MBC Group
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-08-cv-05592)
District Judge:  Dickinson R. Debevoise
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 14, 2012

Before:  RENDELL, FUENTES, and CHAGARES, *Circuit Judges*.

(Filed:  December 21, 2012)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

Dandana, a television network and content distributor, filed a complaint in this

action seeking damages for breach of contract, unjust enrichment, and common law fraud

arising out of a television distribution deal with Middle East Broadcasting, a United Arab

Emirates company which is a satellite broadcaster in the Middle East. Dandana's central

claim is that Middle East Broadcasting breached an oral agreement for revenue sharing.

Middle East Broadcasting contends that there was no oral agreement, and that it complied

with all obligations under the parties' fully integrated written agreement. The District

Court granted Middle East Broadcasting's motion for summary judgment and dismissed

Dandana's complaint in its entirety. Dandana now appeals that ruling as well as the

denial of its motion to exclude expert testimony. We will affirm.[1]

## I.      Factual and Procedural Background

Appellant Dandana, LLC ("Dandana") is a limited-liability company

headquartered in Rochelle Park, New Jersey. It is a television network and content

distributor that serves as an agent between producers of English and Arabic-language

television stations and cable and satellite broadcasters in the United States. Appellee

MBC FZ-LLC ("Middle East Broadcasting") is a limited-liability company established in

Dubai, United Arab Emirates, which owns the Arabic-language television channels

MBC1 and Al Arabiya.

Programming produced by Middle East Broadcasting was broadcast in the United

States to Dish Network ("Dish") subscribers through Arab Digital Distribution ("Arab

Digital") pursuant to a previous agreement between Middle East Broadcasting and Arab

Digital. Middle East Broadcasting licensed the broadcast rights to the MBC1 and Al

---

[1] The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's summary judgment ruling *de novo*, applying the same standard as the District Court. *Ideal Dairy v. Labatt*, 90 F.3d 737, 743 (3d Cir. 1996).

Arabiya channels to Arab Digital, and Arab Digital negotiated placement of those channels with Dish.

Around May 2007, a former Middle East Broadcasting consultant informed Dandana CEO Amro Al Tahwi ("Al Tahwi") that Middle East Broadcasting's contract with Arab Digital was set to expire in February 2008. The consultant proceeded to introduce Al Tahwi to Mohammed Al Windawee ("Al Windawee"), the head of distribution for Middle East Broadcasting. After the introduction, Al Windawee and Al Tahwi began discussing the possibility that Dandana take over negotiations with Dish for the redistribution of Middle East Broadcasting channels in the United States on Middle East Broadcasting's behalf after Middle East Broadcasting's contract with Arab Digital expired.

On July 29, 2007, Al Tahwi met with Al Windawee at Middle East Broadcasting's offices in Dubai to discuss a potential deal.[2] The next day, Al Windawee sent an email to Al Tahwi containing the minutes of the meeting. That July 30, 2007 email stated: "It was great meeting you and have [sic] such thorough discussion, below is the meeting minutes, I will keep you updated and look forward to have [sic] an agreement in place." App. 335. The email also noted a proposed revenue split of 70%-30% between Middle East Broadcasting and Dandana, respectively.[3] On the same day, Al Tahwi responded with

---

[2] As Appellee correctly notes in its brief, the District Court's Opinion inadvertently referenced "July 27, 2007" as the date of this meeting. *See* Appellees' Br. at 8 n.2. The District Court endeavored to correct this mistake by its Order dated November 10, 2011. *See* App. 3. The correct date is July 29, 2007, which we will use throughout this Opinion.
[3] "Revenue split" refers to the division of licensing and advertising revenue that would result from a deal with Dish.

comments indicating his agreement and disagreement with certain terms contained in the email. Following this exchange, communications between the parties ceased for five months.

In December 2007, Al Tahwi wrote Al Windawee requesting that their agreement be reduced to writing. Al Tahwi also sought a letter of representation addressed to Dish from Middle East Broadcasting, so that Dandana could negotiate with Dish on Middle East Broadcasting's behalf. Al Windawee responded two weeks later, stating, "I think the time has come to move things forward, thus we need to discuss and confirm some of the details that I have listed below . . . ." App. 351. Regarding the revenue split, Al Windawee wrote: "Revenue sharing will be as follows; we need to agree on the percentage with our CFO, we initially talked about 70%-30% [Middle East Broadcasting]-Dandana respectively." *Id*.

In January 2008, Al Tahwi and Al Windawee spoke by telephone, and Al Windawee informed Al Tahwi that he would prepare a temporary authorization letter to allow Al Tahwi to negotiate with Dish on Middle East Broadcasting's behalf.[4] Al

---

[4] Dandana produced a letter that Al Windawee allegedly sent to Al Tahwi dated January 6, 2008, which states that it "formally confirm[s] that Dandana LLC is the sole distributor/agent for [Middle East Broadcasting] channels in the United States." App. 362. The letter also notes the agreement to split revenue 70%-30% and states that the parties should formalize their long format agreement after February 29, 2008. Middle East Broadcasting disputes that Al Windawee ever sent this letter, claiming that it is a fraud. Middle East Broadcasting's forensic expert testified that the letter was not sent by Al Windawee or Middle East Broadcasting, and that the letter did not appear on Dandana's computer systems until July 9, 2010, approximately one week after Middle East Broadcasting served its document requests on Dandana. Dandana provided its own expert testimony supporting the veracity of the letter.

Windawee provided a draft of the authorization letter, which stated that Al Tahwi was a "temporary representative" of Middle East Broadcasting for the purpose of negotiating the broadcast rights of Middle East Broadcasting channels with Dish. App. 427. The authorization letter specified that any deals signed by Dandana "shall be considered null and void." *Id.* Al Tahwi requested that the restrictions be attached as an exhibit, so that Al Tahwi could "use the letter without the Exhibit," but Middle East Broadcasting rejected this request. App. 426.

Instead, Al Windawee invited Al Tahwi to submit a formal bid for the distribution rights to MBC1 and Al Arabiya. Soon thereafter Al Tahwi submitted a bid, proposing a 75%-25% revenue split and exclusive distribution rights of Middle East Broadcasting in North America and Latin America. Al Tahwi also requested a formal bid invitation letter in order to indicate to Dish that Middle East Broadcasting intended to end its relationship with Arab Digital. Al Windawee provided the formal bid invitation letter, which Al Tahwi presented to Dish.

Al Tahwi arranged for a meeting between Middle East Broadcasting and Dish in March 2008. Al Tahwi attended this meeting but did not participate in the negotiations between Middle East Broadcasting and Dish. Ultimately, Middle East Broadcasting and Dish entered into a written agreement which provided that Middle East Broadcasting channels would be carried on Dish. This agreement did not contemplate the use of or compensation of a middleman or distributor. Dish signed a separate agreement with Al Tahwi's company Sarasat to provide signal transmission for the MBC1 channel from the Middle East to the United States.

5

Al Tahwi claims that Al Windawee informed him that Middle East Broadcasting would not honor the agreement to pay Dandana a share of the revenue from the Middle East Broadcasting-Dish agreement but offered to pay a lump sum commission instead. In an email to Al Windawee and Sam Barnett ("Barnett"), the Chief Operating Officer and General Manager of Middle East Broadcasting, Al Tahwi stated that "all I am looking for is some sort of just and reasonable recognition, which I felt that I didn't get until now, however, I will leave it up to you and Mohammed." App. 543. At this point, Barnett took over negotiations with Al Tahwi.

On May 27, 2008, Middle East Broadcasting and Dandana entered into a written agreement regarding the revenue share. The agreement states that: "In consideration of the 'CashCommission' [sic], [Dandana] agrees to provide non-exclusive Services to [Middle East Broadcasting] as per the terms and conditions of this Agreement." App. 611. "Cash Commission" is defined by the agreement, and includes two lump sum payments of $250,000, as well as a percentage of advertising revenues in the United States and Canada over a two-year period. The agreement also defines "Services" as "the services that [Dandana] shall provide to [Middle East Broadcasting] under this Agreement which includes [Dandana] introducing [Middle East Broadcasting] to distribution operators in the United States for the purpose of distribution of the Middle East Broadcasting Channels and therefore acting as an introducer between [Middle East Broadcasting] and these distribution operators." App. 610. In addition, the agreement contained an integration clause which provides: "This Agreement supersedes all previous agreements, representations or promises and sets out all the terms agreed between the

6

parties. Any amendment or alteration to this Agreement must be in writing and signed by an authorized signatory of each party." App. 612. Al Tahwi signed the agreement on May 27, 2008 and emailed it to Middle East Broadcasting along with an invoice for the first payment of $250,000. Middle East Broadcasting never signed the agreement.

Three weeks later, Al Tahwi emailed Barnett seeking Middle East Broadcasting's executed agreement. Barnett responded that the money would be sent and that he would try to have the agreement signed. Five days after that, Al Tahwi's lawyer sent a letter to Barnett threatening suit if the first lump sum payment of $250,000 was not paid. Soon thereafter, Dandana received the first lump sum payment of $250,000, which it retained.

In November 2008, Dandana filed suit in the District Court for the District of New Jersey, seeking damages for breach of contract, unjust enrichment, and common law fraud. Dandana claims that an oral contract was entered into with Middle East Broadcasting on July 29, 2007, which required Middle East Broadcasting to pay Dandana 30% of revenue, and that Middle East Broadcasting breached the agreement by failing to pay. In November 2011, the District Court granted summary judgment in favor of Middle East Broadcasting. The District Court held that (1) an oral contract was not reached on July 29, 2007; (2) even if a contract had been reached on July 29, 2007, the subsequent agreement reached on May 27, 2008 was an unambiguous, fully integrated written contract between the parties concerning the same subject matter, which prohibited recourse to prior oral representations; (3) a claim of unjust enrichment as a quasi-contract remedy cannot stand when there is an existing contract in place on the identical subject;

7

and (4) Dandana failed to properly plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b). Dandana timely filed this appeal.

## II. Discussion

Dandana argues that the District Court erred in granting summary judgment in favor of Middle East Broadcasting because there were numerous issues of material fact regarding whether the parties entered into an oral contract on July 29, 2007. Dandana also argues that the District Court ignored issues of material fact regarding whether the parties entered into an enforceable contract on May 27, 2008. It contends that the May 27, 2008 agreement is unenforceable since it was never signed by Middle East Broadcasting, and even if the agreement was an enforceable contract, it covers a different subject matter than the July 29, 2007 contract.

A party is entitled to summary judgment where "the contract language is unambiguous and the moving party is entitled to judgment as a matter of law." *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.,* 180 F.3d 518, 521 (3d Cir. 1999). In order to grant summary judgment, the court must find "that the contractual language is subject to only one reasonable interpretation." *Id.*[5]

### A. The July 29, 2007 Agreement

Dandana argues that it entered into a binding oral agreement with Middle East Broadcasting on July 29, 2007. The District Court found that no enforceable oral contract was formed at the July 2007 meeting, as there was no manifestation of mutual assent to the essential terms of the contract. Dandana contends that the existence of a valid and

_____

[5] The parties agree that New Jersey law applies to the interpretation of their agreement.

8

binding oral agreement is a question of intent for a jury and is not to be decided on summary judgment. It finds support for this proposition in *McBarron v. Kipling Woods, LLC*, 838 A.2d 490, 492 (N.J. Super. Ct. App. Div. 2004). However, unlike *McBarron*, in which an agreement was reached over the telephone, the evidence in the present case consists of documented emails, which clearly indicate that the essential terms of the contract were not agreed upon. While Dandana argues that Al Windawee's email from July 30, 2007 reflects the parties' agreement on critical terms, both the email from Al Windawee and Al Tahwi's response indicate ongoing negotiations over essential terms of the agreement. Al Windawee's email explicitly states that he "looked forward to hav[ing] an agreement in place," App. 335, which indicates that the discussions between the parties were ongoing. Furthermore, Al Tahwi replied to this email with numerous comments, demonstrating that several outstanding terms had not been agreed upon.

Dandana further argues that the email sent on December 23, 2007 by Al Windawee to Al Tahwi demonstrates that an oral contract was reached on July 29, 2007. However, that email states that "we need to discuss and confirm some of the details that I have listed below," App. 351, again indicating that certain essential terms, including the revenue sharing, had not been agreed upon. Lastly, Dandana argues that a letter allegedly sent by Al Windawee on January 6, 2008 demonstrates that an oral contract was reached on July 29, 2007. While the parties dispute the authenticity of this letter, *see supra* note 4, its authenticity is immaterial, as the letter indicates that the agreement had not been finalized. *See* App. 362 (stating "we should finalize our long format agreement after

9

February 29, 2008."). Thus, the District Court did not err in finding that no enforceable oral agreement had been entered into on July 2007.

**B.      The May 27, 2008 Agreement**

Dandana argues the May 27, 2008 Agreement is not a valid agreement because Middle East Broadcasting never signed it. Middle East Broadcasting responds that while it inadvertently failed to sign, it nonetheless performed its obligation under the agreement, thereby rendering it an enforceable contract.

Pursuant to New Jersey contract law, as long as the parties agree upon the essential terms of a settlement, leaving the details to be "fleshed out" in a writing thereafter, courts will enforce a settlement agreement notwithstanding the absence of a future writing. *Lahue v. Pio Costa*, 623 A.2d 775, 788 (N.J. Super. Ct. App. Div. 1993) (citation omitted). It has long been established that an offer may be accepted by performance. *See Noye v. Hoffman-LaRoche Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990); see also *United States* ex rel. *Worthington Pump & Mach. Corp. v. Johnson Contracting Corp.*, 139 F.2d 274, 277 (3d. Cir. 1943) (holding that a binding contract was created when a customer's order constituting an offer was accepted by a manufacturer's performance in furnishing the equipment ordered).

Here, the parties negotiated an agreement over the telephone on May 27, 2008. After the telephone conference on May 27, 2008, Middle East Broadcasting provided Al Tahwi with a written agreement, which Al Tahwi signed after making modifications. Al Tahwi then submitted the agreement along with an invoice for payment of the agreed upon first lump sum payment of $250,000, noting that payment was based on the May 27,

10

2008 agreement. Middle East Broadcasting subsequently provided payment. Thus, the performance of the parties demonstrates an acceptance of the written offer on May 27, 2008, and thus an enforceable contract.

Furthermore, the May 27, 2008 agreement contained an integration clause stating that it supersedes all previous agreements and sets out all of the terms agreed to between the parties. The agreement also indicates that Al Tahwi was receiving payment specifically for introducing Dish to Middle East Broadcasting. Consequently, even if Dandana and Middle East Broadcasting had entered into an enforceable oral agreement on July 29, 2007, it would have been superseded by the May 27, 2008 agreement. *See Harker v. McKissock*, 96 A.2d 660, 665 (N.J. 1953) ("The essence of voluntary integration is the intentional reduction of the act to a single memorial; and where such is the case the law deems the writing to be the sole and indisputable repository of the intention of the parties.").

### C. Unjust Enrichment

Dandana argues that the District Court erred in finding that the May 27, 2008 contract forecloses Dandana's recovery on claims sounding in contract theories such as unjust enrichment.

Under New Jersey law, courts consider quasi-contract principles to prevent unjust enrichment or unconscionable benefit or advantage. *See Bergen Cnty. Sewer Auth. v. Borough of Bergenfield*, 361 A.2d 621, 629-30 (N.J. Super. Ct. 1976). Quasi-contract liability will not be imposed by New Jersey courts, however, if an express contract exists concerning the identical subject matter. *See Van Orman v. Am. Ins. Co.*, 680 F.2d 301,

11

310 (3d Cir. 1982). The parties are bound by their agreement, and there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties. *Id*.

Under these principles, Dandana's claim for quasi-contractual liability based on unjust enrichment fails as a matter of law. The May 27, 2008 agreement between Dandana and Middle East Broadcasting is a valid unrescinded contract, which sets out the relative rights and responsibilities of the parties. The agreement states that the services for which Dandana was being paid include "introducing [Middle East Broadcasting] to distribution operators in the United States for the purpose of distribution of the Middle East Broadcasting Channels." App. 610. Accordingly, the first lump sum payment Dandana received was compensation for Al Tahwi's services in introducing Middle East Broadcasting to Dish. Consequently, the District Court did not err in holding that "acceptance of the May 27, 2008 contract forecloses recovery on claims sounding in quasi-contract theories such as unjust enrichment or *quantum merit*." App. 22.

Finally, having determined that the District Court did not err in granting Middle East Broadcasting's motion for summary judgment, we conclude that it properly dismissed Dandana's motion to exclude expert testimony as moot.

III.  **Conclusion**

Accordingly, we will affirm the final judgment and order of the District Court.